**Nos. 26-1141, 26-1195**

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS–HARVARD FACULTY CHAPTER; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY; RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS–AMERICAN FEDERATION OF TEACHERS; MIDDLE EAST STUDIES ASSOCIATION,
*Plaintiffs–Appellees, Cross-Appellants,*

v.

MARCO RUBIO, in the official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; MARKWAYNE MULLIN, in the official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; DAVID J. VENTURELLA, in the official capacity as Acting Director of U.S. Immigration and Customs Enforcement; DONALD J. TRUMP, in the official capacity as President of the United States; UNITED STATES,
*Defendants–Appellants, Cross-Appellees.*

On Appeal from a Judgment of the United States District Court
for the District of Massachusetts

**BRIEF OF AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., AMERICAN CIVIL LIBERTIES UNION OF MAINE, AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE, AMERICAN CIVIL LIBERTIES UNION OF PUERTO RICO, AND AMERICAN CIVIL LIBERTIES UNION OF RHODE ISLAND AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' CROSS-APPEAL AND REMAND IN PART**

Jessie J. Rossman No. 1161236
Rachel E. Davidson No. 1197867
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
rdavidson@aclum.org

Andrew F. Sellars No. 1174832
Albert Sellars LLP
769 Centre Street, Suite 199
Boston, MA 02130
(617) 798-7922
andy@albertsellars.law

*Counsel continued on next page*

Esha Bhandari No. 1163769
Brian Hauss No. 1183865
Nathan Wessler No. 1188344
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
ebhandari@aclu.org
bhauss@aclu.org
nwessler@aclu.org

Carol Garvan No. 1145471
Zachary L. Heiden No. 99242
American Civil Liberties Union
of Maine Foundation
P.O. Box 7860
Portland, ME 04112
(207) 619-6224
cgarvan@aclumaine.org
zheiden@aclumaine.org

Lynette Labinger No. 23027
Cooperating Counsel
American Civil Liberties Union
Foundation of Rhode Island
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com

Gilles R. Bissonnette No. 123868
Henry Klementowicz No. 1179814
Maria D. Savarese No. 1223427
American Civil Liberties Union
Foundation of New Hampshire
18 Low Avenue
Concord, NH 03301
(603) 224-5591
gilles@aclu-nh.org
henry@aclu-nh.org
maria@aclu-nh.org

Fermín L. Arraiza-Navas No. 73810
American Civil Liberties Union
Puerto Rico Chapter
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493
farraiza@aclu.org

*Counsel for Amici Curiae*

Dated: August 12, 2026

**CORPORATE DISCLOSURE STATEMENT**

*Amici* American Civil Liberties Union, American Civil Liberties Union of Massachusetts, Inc., American Civil Liberties Union of Maine, American Civil Liberties Union of New Hampshire, American Civil Liberties Union of Puerto Rico, and American Civil Liberties Union of Rhode Island each state that they do not have a parent corporation and there is no corporation that owns 10% or more of their stock.

## TABLE OF CONTENTS


**CORPORATE DISCLOSURE STATEMENT ........................................................ i**

**TABLE OF CONTENTS ................................................................................ ii**

**TABLE OF AUTHORITIES.......................................................................... iii**

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE.................................................................................................... vi**

**STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS.............. vii**

**ARGUMENT ............................................................................................. 1**

**I. Injunctive Relief Is Appropriate Here, And It Should Not Cause the Very Harm the Lawsuit Is Meant to Prevent. .................................. 3**

**a. An Injunction Is Appropriate, And Must Consider the Robust First Amendment Right of Associational Privacy. ............................. 4**

**b. Broadly Enjoining Enforcement Is Appropriate and Necessary to Provide Associational Plaintiffs Complete Relief........................ 9**

**II. *CASA* Allows Courts to Craft Injunctions that Benefit Others When It Is Necessary to Provide Complete Relief to Parties......................... 11**

**CONCLUSION .......................................................................................... 14**

# TABLE OF AUTHORITIES

**Cases**

*AAUP v. Rubio*, 802 F. Supp. 3d 120 (D. Mass. 2025) .......................................1, 3, 4, 5, 9

*AAUP v. Rubio*, 823 F. Supp. 3d 94 (D. Mass. 2026) ...................................................... 6

*AAUP v. Rubio*, No. 25-cv-10685, 2026 WL 524753 (D. Mass. Jan. 22, 2026) ............1, 2

*AAUP v. Trump*, 815 F. Supp. 3d 907 (N.D. Cal. 2025) .................................................. 11

*Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. OMB*,
807 F. Supp. 3d 1004 (N.D. Cal. 2025)..............................................................12

*Ams. for Prosperity v. Bonta*, 594 U.S. 595 (2021) ..................................................8, 9

*Barton v. Clancy*, 632 F.3d 9 (1st Cir. 2011) ................................................................ 9

*Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982) ............................ 8

*Chi. Women in Trades v. Trump*, No. 25-cv-2005,
2025 WL 3034056 (N.D. Ill. Oct. 30, 2025) ......................................................12

*Cool Moose Party v. Rhode Island*, 183 F.3d 80 (1st Cir. 1999) ......................................... 8

*Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406 (1977) ...................................................... 5

*Doe v. Trump*, 142 F.4th 109 (1st Cir. 2025) ............................................................. 14

*Doe v. Trump*, 157 F.4th 36 (1st Cir. 2025) ...................................................... 5, 11, 13

*First Choice Women's Resource Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114 (2026).........2, 8, 9

*Gaspee Project v. Mederos*, 13 F.4th 79 (1st Cir. 2021) ..................................................... 8

*In re Providence J. Co.*, 820 F.2d 1342 (1st Cir. 1986),
*op. modified en banc*, 820 F.2d 1354 (1st Cir. 1986) ................................................... 6

*Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589 (1967) ................................... 10

*L.A. Press Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026) ..................................................13

*Lynch v. Dukakis*, 719 F.2d 504 (1st Cir. 1983) ............................................................. 4

*Make the Road N.Y. v. Noem*, No. 25-cv-190, 2025 WL 2576701 (D.D.C. Sept. 5, 2025) .......... 10

*Massachusetts v. NIH*, 164 F.4th 1 (1st Cir. 2026) .......... 3, 11

*N.H. Indonesian Cmty. Support v. Trump*, 157 F. 4th 29 (1st Cir. 2025) .......... 13

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) .......... 7, 8, 9

*Nat'l Educ. Ass'n-N.H. v. N.H. Atty. Gen.*, 806 F. Supp. 3d 166 (D.N.H. Oct. 2, 2025) ... 13

*New York v. Trump*, 764 F. Supp. 3d 46 (D.R.I. 2025) .......... 6

*Paris v. Dep't of Housing & Urb. Dev.*, 843 F.2d 561 (1st Cir. 1988) .......... 13

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) .......... 8

*President & Fellows of Harvard Coll. v. HHS*, 798 F. Supp. 3d 77 (D. Mass. 2025) .......... 7

*Rhode Island v. Trump*, 810 F. Supp. 3d 283 (D.R.I. 2025) .......... 12

*Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1 (1st Cir. 1987) .......... 2

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) .......... 4, 8

*Sweezy v. New Hampshire*, 354 U.S. 234 (1957) .......... 10

*Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23 (1st Cir. 2002) .......... 1

*Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026) .......... 7

*Tinker v. Des Moines Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .......... 10

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .......... 1, 2, 11, 13, 14

*United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29 (D.D.C. 2025) . 12

*United States v. Comley*, 890 F.2d 539 (1st Cir. 1989) .......... 8

*Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) .......... 10

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025) .......... 3, 12

*Woonasquatucket River Watershed Council v. Dep't of Agric.*, --- F.4th ---, 2026 WL 2279789 (1st Cir. Aug. 7, 2026) .......... 3

## Other Authorities

SNELL'S PRINCIPLES OF EQUITY (28th ed. 1982) .................................................................. 3

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

The **American Civil Liberties Union** ("ACLU") is a nationwide, nonprofit organization that since 1920 has sought to protect the civil liberties of all Americans. The **American Civil Liberties Union of Massachusetts** ("ACLUM"), the **American Civil Liberties Union of Maine** ("ACLU-ME"), the **American Civil Liberties Union of New Hampshire** ("ACLU-NH"), the **American Civil Liberties Union of Puerto Rico** ("ACLU-PR"), and the **American Civil Liberties Union of Rhode Island** ("ACLU-RI"), are affiliates of the ACLU. The ACLU and its affiliates have frequently appeared as both counsel and *amici* in cases about the Constitution's limits on government power, including consequential First Amendment cases about retaliation, academic freedom, and associational privacy. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) (ACLU as counsel); *Nat'l Educ. Ass'n v. Dep't of Educ.,* 779 F. Supp. 3d 149 (D.N.H. 2025) (ACLU, ACLUM, and ACLU-NH as counsel); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (ACLU as amicus); *President & Fellows of Harvard Coll. v. HHS*, 798 F. Supp. 3d 77 (D. Mass. 2025) (ACLU and ACLUM as amicus); *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493 (1st Cir. 2021) (ACLUM as amicus).

This brief is filed pursuant to Federal Rule of Appellate Procedure 29(a)(2). Both Plaintiffs–Appellees/Cross-Appellants and Defendants–Appellants/Cross-Appellees have consented to this brief.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* certify that no party or party's counsel authored this brief in whole or in part, that no party or party's counsel provided any money that was intended to fund the preparation or submission of this brief, and no party or person—other than the *amici curiae* or their counsel—contributed money that was intended to fund the preparation or submission of this brief.

## ARGUMENT

Federal courts are empowered to fashion injunctions "to provide complete relief to plaintiffs," and must "tailor injunctions to the harm that they address." *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). After a nine-day trial, the district court below found that the government defendants, including multiple cabinet secretaries, acted in a coordinated fashion with the specific intent to chill the constitutionally protected speech and assembly of noncitizen academics. *AAUP v. Rubio*, 802 F. Supp. 3d 120, 131 (D. Mass. 2025), *appeals docketed,* No. 26-1141 (1st Cir. Feb. 19, 2026), No. 26-1195 (1st Cir. Feb. 24, 2026). Based on that record, complete relief requires a permanent injunction protecting all members of the Plaintiff associations from the unconstitutional policy and its attendant chilling effect.

Plaintiffs requested an injunction barring the Policy's enforcement against anyone. On the one hand, the district court believed that this form of injunctive relief would be prevented by *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), because it would protect third parties. *See AAUP v. Rubio*, No. 25-cv-10685, 2026 WL 524753 at *2 n.2 (D. Mass. Jan. 22, 2026), *appeals docketed,* No. 26-1141 (1st Cir. Feb. 19, 2026), No. 26-1195 (1st Cir. Feb. 24, 2026).

On the other hand, an injunction limited to Plaintiffs' members would cause the very injury that it is meant to address. Any relief that would require the Plaintiff associations to turn over their membership rolls to obtain a remedy would constitute

its own First Amendment injury, causing exactly the chill that Plaintiffs sought to forestall. *See First Choice Women's Resource Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1123 (2026) ("[D]emands for private donor information 'inevitabl[y]' carry with them a 'deterrent effect on the exercise of First Amendment rights.'" (quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976) (per curiam)).

The district court attempted to square this circle with its sanctions remedy, apparently endeavoring to protect the member rolls of the American Association of University Professors ("AAUP") and the Middle East Studies Association ("MESA"). *See AAUP*, 2026 WL 524753 at **1–2. But the sanctions remedy would require each targeted noncitizen to expend considerable time and resources litigating the impropriety of their removal, possibly while in detention. This does not simply fail to remove the unconstitutional chill on their expression. It exacerbates such chill, by forcing noncitizens who speak out and are targeted by the government to defend themselves in a novel process, during which time they may be detained and therefore further censored. *See Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987) ("It has long been held that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion))).

These pitfalls of the sanctions remedy can be entirely avoided, because the district court erred in assuming that *CASA* bars Plaintiffs' requested injunction. Injunctions have their roots in equity, *see CASA*, 606 U.S. at 841, and "equity will not

suffer a wrong to be without a remedy." SNELL'S PRINCIPLES OF EQUITY 28 (28th ed. 1982). An injunction is appropriate here given the gravity of the unconstitutional misconduct that was found. There is room for courts to craft injunctions that benefit nonparties if such an approach is necessary to provide complete relief to the parties at interest, as it is here. *See Massachusetts v. NIH*, 164 F.4th 1, 19 (1st Cir. 2026); *Washington v. Trump*, 145 F.4th 1013, 1038 (9th Cir. 2025), *cert. denied*, No. 25-364, 2026 WL 1871300 (June 30, 2026). And because any injunction that orders the AAUP or MESA to reveal its member lists to the government would cause the very harm the injunction is meant to remedy, enjoining enforcement of the policy itself, at least with respect to noncitizen students and faculty, is the appropriately tailored remedy.

## I. Injunctive Relief Is Appropriate Here, And It Should Not Cause the Very Harm the Lawsuit Is Meant to Prevent.

Courts are empowered to use injunctions to provide complete relief to parties, and those injunctions may extend to nonparties if the court finds it is "necessary to provide the [plaintiffs] with complete relief." *Woonasquatucket River Watershed Council v. Dep't of Agric.*, --- F.4th ---, 2026 WL 2279789 at *18 (1st Cir. Aug. 7, 2026). As an essential part of complete relief, a court should also weigh whether membership organizations that have prevailed on a chill-based First Amendment challenge to a retaliatory government policy, *see AAUP*, 802 F. Supp. 3d at 131, should have to choose between identifying their members to the government, thus causing the very chill the lawsuit was brought to prevent, or accepting incomplete relief.

Equity and common sense reject this Hobson's choice. *See Sindi v. El-Moslimany*, 896 F.3d 1, 29 (1st Cir. 2018) (courts have "the 'continuing duty and responsibility to assess' an injunction's 'efficacy and consequences'" (quoting *Brown v. Plata*, 563 U.S. 493, 542 (2011))). An injunction prohibiting Defendants from enforcing the Policy, at least with respect to noncitizen students and faculty, is necessary to provide complete relief to Plaintiffs and their members.

**a. An Injunction Is Appropriate, And Must Consider the Robust First Amendment Right of Associational Privacy.**

The district court conducted an extensive trial "on the issue of whether the rights of these plaintiffs to constitutional freedom of speech have been unconstitutionally chilled by the deliberate conduct of any or all of these . . . defendants[,]" *AAUP*, 802 F. Supp. 3d at 131, and found, by clear and convincing evidence, that they had, *see id.* at 175. "The 'principles of equity jurisprudence' suggest that 'the scope of injunctive relief is dictated by the extent of the violation established[.]'" *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983), *abrogated on other grounds by Suter v. Artist M.*, 503 U.S. 347 (1992) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Here, what the court found was that enforcement actions "percolated up the chain of command," that "decisionmakers at every step of the challenged implementation" were involved in the action, and that the basis for removal was "centered on[] core First Amendment speech and expressive conduct, such as attending public protests, leading such protests, or even publishing op-eds."

*AAUP*, 802 F. Supp. 3d at 187. In short, the unconstitutional chilling was flagrant, widespread, and calculated. Its remedy must be proportionate. *See Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977) ("Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." (cleaned up)).

Complete relief for this constitutional violation would require that all members of the plaintiff organizations are shielded from any version of this unconstitutional policy being applied to them. *See Doe v. Trump*, 157 F.4th 36, 80–81 (1st Cir. 2025), *cert. denied*, No. 25-899, 2026 WL 1871309 (June 30, 2026). As the district court itself acknowledged, in this case neither vacatur nor declaratory relief is likely to be adequate to achieve that goal. Declaratory relief should, in theory, restrain future government action, but evidence and experience suggest that it may amount to little more than a "divisive scold" in this context. *See AAUP*, 802 F. Supp. 3d at 194. "[I]t will not do simply to order the Public Officials to cease and desist in the future. The harm here and the deprivation suffered runs far deeper." *Id.* at 198. At the same time, vacatur of the policy alone suffers from the difficulty that some applications at the outer bounds of this policy may be hard to identify. At times the existence of the policy itself was flatly denied by the government. *See id.* at 191 ("The Public Officials have simply denied the practice and offered no reasonable explanation."). Given this lack of candor, it is unclear that vacatur would stop the government from attempting to declare that any renewed viewpoint-based

immigration enforcement was, in fact, a new, different policy, instead of the vacated one. *See, e.g.*, *New York v. Trump*, 764 F. Supp. 3d 46, 53 (D.R.I. 2025), *appeal voluntarily dismissed as noted in* No. 25-1138, 2025 WL 2301448 (1st Cir. Feb. 13, 2025) (after a legal challenge to an Office of Management and Budget Directive pausing federal funds, "[t]he Defendants now claim that this matter is moot because it rescinded the OMB Directive. But the evidence shows that the alleged rescission of the OMB Directive was in name-only and may have been issued simply to defeat the jurisdiction of the courts.").

The sanctions remedy offered by the district court similarly fails to provide Plaintiffs with complete relief. The district court acknowledges as much, noting that the court cannot guarantee that federal district courts outside of Massachusetts will adopt the remedy, leaving many of Plaintiffs' members outside the scope of its benefit. *AAUP v. Rubio*, 823 F. Supp. 3d 94, 112 (D. Mass. 2026). Even if members did fall within it, the remedy itself contemplates a factual hearing that will inherently take time to develop, during which there is no guarantee that the government would not keep the AAUP or MESA member detained, inherently harming freedom of expression by restraining their speech for a time. *In re Providence J. Co.*, 820 F.2d 1342, 1351 (1st Cir. 1986), *op. modified en banc*, 820 F.2d 1354 (1st Cir. 1986) ("The court's natural instinct was to delay the matter temporarily so that a careful, thoughtful answer could be crafted . . . [, but] when that approach results in a prior restraint on pure speech . . . it is not allowed.").

Plaintiffs' request for an injunction is also consistent with other recent injunctions that courts have granted to remedy First Amendment retaliation by the government, post-*CASA*. *See Thakur v. Trump*, 176 F.4th 1187, 1206 (9th Cir. 2026) (per curiam) (affirming in relevant part a preliminary injunction in a class action regarding termination of grants for retaliatory reasons); *President & Fellows of Harvard Coll. v. HHS*, 798 F. Supp. 3d 77, 136 (D. Mass. 2025), *appeal docketed,* No. 25-2230 (1st Cir. Dec. 30, 2025) (granting a permanent injunction against "reimposing any unconstitutional conditions imposed to date" in addition to vacatur of freezes for grants issues to Harvard under the APA).

But at the same time, injunctive relief limited to Plaintiffs and their members would not provide complete relief in this case, because it would require Plaintiffs to disclose their membership lists to the government. As the Supreme Court held almost seventy years ago, organizations should not be forced to reveal their membership because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association . . ." and "compelled disclosure of [an organization's] . . . membership is likely to affect adversely the ability of [an organization] and its members to pursue their collective effort to foster beliefs . . . ." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 462–63 (1958). Since that time, this Court and the Supreme Court have further clarified that "[t]he freedom to associate with others for the advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments." *Cool*

*Moose Party v. Rhode Island*, 183 F.3d 80, 82 (1st Cir. 1999) (quoting *Kusper v. Pontikes*, 414 U.S. 51, 56–57 (1973)). "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy" may constitute an effective restraint on freedom of association. *Patterson*, 357 U.S. at 462. "Strip away the ability of individuals to work together free from governmental oversight and intrusion, and the freedom to associate may become no freedom at all—individuals deterred, groups diminished, and their protected advocacy suppressed." *First Choice*, 146 S. Ct. at 1123.

Accordingly, "[t]he Constitution protects against the compelled disclosure of political associations and beliefs" across a variety of contexts. *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 (1982). Any law or regulation that would require the disclosure of membership or donor information for advocacy groups must overcome heightened First Amendment scrutiny. *Ams. for Prosperity v. Bonta*, 594 U.S. 595, 606 (2021); *Gaspee Project v. Mederos*, 13 F.4th 79, 85 (1st Cir. 2021). Additionally, organizations also have a qualified First Amendment privilege against revealing the identities of their members in response to discovery demands. *United States v. Comley*, 890 F.2d 539, 543–44 (1st Cir. 1989); *see Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). And courts, when fashioning injunctive relief, must not themselves violate these First Amendment protections. *See Sindi*, 896 F.3d at 29 (noting, in the context of injunctions that run against non-governmental entities, that injunctions that implicate First Amendment freedoms are "an area of considerable constitutional concern, and one that has major institutional implications for the federal judiciary").

Requiring the AAUP and MESA to produce lists of their members as a part of any injunction against government chilling "would result in nullification of the right at the very moment of its assertion." *Patterson*, 357 U.S. at 459. After all, the unconstitutional activity in this very case began with a list of names based on perceived political views. *See AAUP*, 802 F. Supp. 3d at 139 (testimony that DHS leadership reviewed a list of 5,000 names from the Canary Mission website and tasked a "tiger team" to develop grounds for deportation). To require AAUP and MESA to supply their own lists of names to the very same government actors is a disclosure requirement that "'creates an unnecessary risk of chilling' in violation of the First Amendment." *Ams. for Prosperity*, 594 U.S. at 616 (quoting *Sec. of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 968 (1984)). Under such circumstances, "the pressure to avoid ties and speech which might displease officials can be constant and heavy." *First Choice*, 146 S. Ct. at 1130–31.

**b. Broadly Enjoining Enforcement Is Appropriate and Necessary to Provide Associational Plaintiffs Complete Relief.**

Appropriate relief must consider the full scope of the harm when expression is chilled. In First Amendment retaliation cases, the key harm is the chill experienced by those targeted by the retaliation. *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011). In an academic environment especially, students and faculty "may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially

approved." *Tinker v. Des Moines Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). They instead engage in a space that is "peculiarly the 'marketplace of ideas.'" *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) (plurality opinion) (at a university "[t]he essentiality of freedom in the community . . . is almost self-evident"). A chill in this environment is an especially dangerous harm, which requires a remedy reflecting as much.

An effective injunction therefore must enjoin the policy itself, at least as to all noncitizen students and faculty, as only that will ensure complete relief of Plaintiffs' members without also exposing them to the very harm that the injunction is meant to prevent. This will inherently extend to some nonparties, but this is consistent with cases involving chilling effects directed at member associations in other jurisdictions. *See, e.g.*, *Make the Road N.Y. v. Noem*, No. 25-cv-190, 2025 WL 2576701 at *2 (D.D.C. Sept. 5, 2025), *vacated on other grounds sub nom. Make the Road N.Y. v. Mullin*, 179 F.4th 16 (D.C. Cir. 2026) (rejecting an effort to limit an APA stay to identified members, because "requiring Make the Road to disclose its membership would raise serious constitutional questions"); *Vasquez Perdomo v. Noem*, 148 F.4th 656, 687 (9th Cir. 2025) (per curiam), *stayed*, 146 S. Ct. 1 (2025), *appeal dismissed,* No. 25-4312, 2025 WL 4053187 (9th Cir. Nov. 21, 2025) ("The inadequacy of a list-of-protected-people injunction is multiplied because the list would have to include all of the members of the plaintiff associations," and "[r]equiring organizations to share membership lists with [the government] could raise additional constitutional problems regarding the

freedom of association and privacy.”).

## II. *CASA* Allows Courts to Craft Injunctions that Benefit Others When It Is Necessary to Provide Complete Relief to Parties.

Broad injunctive relief is consistent with *Trump v. CASA, Inc.*, 606 U.S. 831. “Nothing in *CASA* provides that, as a categorical matter, it is improper for a district court to impose an injunction of such breadth if it is necessary to do so to provide the plaintiff with complete relief.” *Doe*, 157 F.4th at 80–81. *CASA* itself acknowledges that injunctions can provide “incidental[]” benefits to nonparties when that is the only “feasible option” to provide full relief to the parties, 606 U.S. at 851. Indeed, in a different case brought by the AAUP about another aspect of the current administration’s ongoing targeting of higher education, the court there found that “to afford Plaintiffs complete relief, the entirety of the coercive practice must be enjoined, not just the suspensions that impact Plaintiffs’ members.” *AAUP v. Trump*, 815 F. Supp. 3d 907, 978 (N.D. Cal. 2025), *appeal dismissed by stipulation*, 2026 WL 1049175 (9th Cir. Feb. 11, 2026) (addressing general cancellation of funding and a particular “task force policy” where Title VI investigations were used to cancel all government funding and demand a penalty payment).

Many other courts after *CASA*, including this Court, have imposed or affirmed broad injunctions against the government when necessary to fully vindicate the rights of the parties. Courts have done so when providing relief to state plaintiffs. *Massachusetts v. NIH*, 164 F.4th at 19 (a nationwide, permanent injunction against

adjusting the indirect cost reimbursement rate for grants); *Washington v. Trump*, 145 F.4th at 1038 (injunction of implementation and enforcement of an Executive Order in its entirety, when shown as necessary to provide relief to plaintiff states); *Rhode Island v. Trump*, 810 F. Supp. 3d 283, 312–14 (D.R.I. 2025), *appeal docketed*, No. 26-1070 (1st Cir. Jan. 21, 2026) (a permanent injunction preventing implementation of Executive Order defunding a series of agencies).

They have also done so when necessary to provide complete relief to organizational plaintiffs. *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 85 (D.D.C. 2025), *appeal docketed,* No. 26-5098 (D.C. Cir. Mar. 31, 2026) ("[A]warding narrower relief—such as by enjoining the named Defendants . . . only in certain States, under certain circumstances, or with respect to certain categories of individuals—would not offer complete relief to the plaintiffs before the court." (cleaned up)); *Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. OMB*, 807 F. Supp. 3d 1004, 1043 (N.D. Cal. 2025), *appealed on other grounds and appeal dismissed*, No. 25-7998, 2026 WL 809820 (9th Cir. Jan. 2, 2026) ("In order to provide complete relief to plaintiffs," reductions in force administered during a government shutdown "must be enjoined in the entire [program, project, or activity] or competitive area containing any of the employees the plaintiffs represent"); *Chi. Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 3034056 at **4–6 (N.D. Ill. Oct. 30, 2025), *appeal docketed,* No. 25-2144 (7th Cir. argued Jan. 30, 2026) (analyzing *CASA* and denying stay of an injunction against enforcement of Executive Order's disclosure obligations

to "any grantee or contractor," to provide relief to plaintiff nonprofit organization).

Still others have granted more limited injunctions, but left space for injunctions to include "non-parties whose protection Plaintiffs have shown necessary to give relief to Plaintiffs." *L.A. Press Club v. Noem*, 171 F.4th 1179, 1191–92 (9th Cir. 2026); *see also Nat'l Educ. Ass'n-N.H. v. N.H. Atty. Gen.*, 806 F. Supp. 3d 166, 211–12 (D.N.H. Oct. 2, 2025).

The relief proposed by the Plaintiffs here, *see* Appellee/Cross-Appellant Br. at 46–48, either in its broader or narrowed form, satisfies the appropriate criteria for an injunction. It makes sure that every member of the Plaintiff organizations receives full relief, not just those specific members identified below to establish standing. *Doe*, 157 F.4th at 80. It is administrable, giving the government an understanding of to whom the injunction applies. *See N.H. Indonesian Cmty. Support v. Trump*, 157 F. 4th 29, 35–36 (1st Cir. 2025). And, of course, it does not cause the very harm that it is meant to prevent, because it does not require AAUP or MESA to disclose lists of their members to the government. There are some faculty and students who may benefit who are not AAUP or MESA members, but those benefits are incidental to ensuring that AAUP and MESA members receive their complete relief. *See CASA*, 606 U.S. at 851; *Paris v. Dep't of Housing & Urb. Dev.*, 843 F.2d 561, 585 (1st Cir. 1988) (Bownes, J., dissenting) ("The fact that, in order to grant complete relief to the plaintiffs, the entire . . . program had to be enjoined, does not mean that the district court improperly acted to protect nonparties.").

## CONCLUSION

The goal of an injunction is to provide the parties with complete relief, a principle that "has deep roots in equity." *CASA*, 606 U.S. at 851; *accord. Doe v. Trump*, 142 F.4th 109, 111 (1st Cir. 2025). In law as in medicine, effective relief should not reaggravate the injury. It should, instead, be aimed at making the plaintiffs whole. *Amici* respectfully request that this Court affirm the district court's grant of declaratory relief and vacatur under the Administrative Procedure Act, and reverse the district court's denial of Plaintiffs' request for injunctive relief, at least as to all noncitizen students and faculty.

Dated: August 12, 2026

Respectfully submitted,

/s/ Andrew F. Sellars
Andrew F. Sellars No. 1174832
Albert Sellars LLP
769 Centre Street, Suite 199
Boston, MA 02130
(617) 798-7922
andy@albertsellars.law

Jessie J. Rossman No. 1161236
Rachel E. Davidson No. 1197867
American Civil Liberties Union
Foundation of Massachusetts, Inc.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
rdavidson@aclum.org

Gilles R. Bissonnette No. 123868
Henry Klementowicz No. 1179814
Maria D. Savarese No. 1223427
American Civil Liberties Union
Foundation of New Hampshire
18 Low Avenue
Concord, NH 03301
(603) 224-5591
gilles@aclu-nh.org
henry@aclu-nh.org
maria@aclu-nh.org

Esha Bhandari No. 1163769
Brian Hauss No. 1183865
Nathan Wessler No. 1188344
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
ebhandari@aclu.org
bhauss@aclu.org
nwessler@aclu.org

Carol Garvan No. 1145471
Zachary L. Heiden No. 99242
American Civil Liberties Union
of Maine Foundation
P.O. Box 7860
Portland, ME 04112
(207) 619-6224
cgarvan@aclumaine.org
zheiden@aclumaine.org

Fermín L. Arraiza-Navas No. 73810
American Civil Liberties Union
Puerto Rico Chapter
Union Plaza, Suite 1105
416 Avenida Ponce de León
San Juan, Puerto Rico 00918
(787) 753-9493
farraiza@aclu.org

Lynette Labinger No. 23027
Cooperating Counsel
American Civil Liberties Union
Foundation of Rhode Island
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com

*Counsel for Amici Curiae*

Dated: August 12, 2026

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the Circuit Rules. The document contains 3,835 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word, in the font Crimson Pro.

Dated: August 12, 2026

/s/ Andrew F. Sellars

Andrew F. Sellars
Albert Sellars LLP
769 Centre Street, Suite 199
Boston, MA 02130
(617) 798-7922
andy@albertsellars.law

Counsel for *Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2026, I caused the foregoing Brief of *Amici Curiae* to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.

Dated: August 12, 2026

/s/ Andrew F. Sellars

Andrew F. Sellars
Albert Sellars LLP
769 Centre Street, Suite 199
Boston, MA 02130
(617) 798-7922
andy@albertsellars.law

Counsel for *Amici Curiae*