**Nos. 26-1141 & 26-1195**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS - HARVARD FACULTY CHAPTER; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY; RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS; MIDDLE EAST STUDIES ASSOCIATION,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

MARCO RUBIO, in the official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; MARKWAYNE MULLIN, in the official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; DAVID J. VENTURELLA, in the official capacity as Acting Director of U.S. Immigration and Customs Enforcement; DONALD J. TRUMP, in the official capacity as President of the United States; UNITED STATES,

*Defendants-Appellants/Cross-Appellees*.

On appeal from the United States District Court for the District of Massachusetts — No. 1:25-CV-10685 (Young, J.)

## PLAINTIFFS-APPELLEES'/CROSS-APPELLANTS' REPLY BRIEF

Edwina Clarke
David Zimmer
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139

Ramya Krishnan
Xiangnong (George) Wang
Nathalie Beauchamps*
Carrie DeCell
Scott Wilkens

(617) 676-9423
edwina@zimmercitronclarke.com

Noam Biale
Michael Tremonte
Alexandra Conlon
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

*Application for bar admission pending

Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

## Table of Contents

Table of Authorities ........ iii

Introduction ........ 1

I. The requested injunctive relief is warranted. ........ 1

A. The district court had subject matter jurisdiction to enter relief. ........ 2

1. Plaintiffs have standing. ........ 2

a. Plaintiffs have associational standing. ........ 2

b. Plaintiffs have organizational standing. ........ 3

c. Plaintiffs' injuries are redressable. ........ 4

2. The INA does not bar jurisdiction over Plaintiffs' claims. ........ 6

a. 8 U.S.C. § 1252(b)(9) does not bar jurisdiction. ........ 6

b. 8 U.S.C. § 1252(g) does not bar jurisdiction. ........ 9

B. The Policy and Defendants' threats violate the First Amendment. ........ 12

1. The Policy violates the First Amendment. ........ 12

2. Defendants' coercive threats independently violate the First Amendment. ........ 14

3. An injunction against Defendants' coercive threats would not violate officials' free speech rights. ........ 17

C. The requested relief is consistent with 8 U.S.C. § 1252(f)(1). ........ 18

D. The requested relief is consistent with *Trump v. CASA*. ........ 23

Conclusion ........ 27

Certificate of Compliance ........................................................................... 28

## Table of Authorities

### Cases

*Aguilar v. ICE*, 510 F.3d. 1 (1st Cir. 2007) .......... 6, 8

*Al Otro Lado v. EOIR*, 138 F.4th 1102 (9th Cir. 2025), *rev'd on other grounds*, 609 U.S. 258 (2026) .......... 22

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) .......... 8

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) .......... 18

*Castañon-Nava v. DHS*, 175 F.4th 828 (7th Cir. 2026) .......... 22

*Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 3034056 (N.D. Ill. Oct. 30, 2025) .......... 26

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 2

*Coal. for Humane Immigrant Rights v. Mullin*, 185 F.4th 1275 (D.C. Cir. 2026) .......... 5

*Coal. for Indep. Tech. Rsch. v. Rubio*, 836 F. Supp. 3d 215 (D.D.C. 2026) .......... 7, 8, 9, 10

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) .......... 9, 11

*Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100 (2025) .......... 4

*DOC v. New York*, 588 U.S. 752 (2019) .......... 4

*Escobar Molina v. DHS*, 811 F. Supp. 3d 1 (D.D.C. 2025) .......... 21

*FDA v. All. for Hippocratic Medicine*, 602 U.S. 367 (2024) .......... 3

*First Choice Women's Res. Ctrs., Inc., v. Davenport*, 608 U.S. 174 (2026) .......... 24

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) .......... 20

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) .......... 18

*Gicharu v. Carr*, 983 F.3d 13 (1st Cir. 2020) ........ 6

*Goldstein v. Galvin*, 719 F.3d 16 (1st Cir. 2013) ........ 17

*Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) ........ 9

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........ 3

*Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) ........ 22

*Hines v. Immigr. L., PLCC v. EOIR*, No. 1:26-cv-01018, 2026 WL 969020 (D.D.C. Apr. 10, 2026) ........ 7

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) ........ 13

*Immigrant Defs.' L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) ........ 26

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ........ 6

*Khalil v. President*, 164 F.4th 259 (3d Cir. 2026) ........ 8

*Mahdawi v. Trump*, 183 F.4th 103 (2d Cir. 2026) ........ 8

*Mahmoud v. Taylor*, 606 U.S. 522 (2025) ........ 26

*Mass. Coal. For Immigr. Reform v. DHS*, 621 F. Supp. 3d 84 (D.D.C. 2022) ........ 7

*Mennonite Church USA v. DHS*, No. 25-5209, 2026 WL 3132807 (D.C. Cir. Oct. 20, 2026) ........ 6

*N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) ........ 3

*Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026), *vacated and remanded on other grounds*, No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026) ........ 22

*NRA v. Vullo*, 602 U.S. 175 (2024) ........ 14, 16, 17

*NWDC Resistance v. ICE*, 493 F. Supp. 3d 1003 (W.D. Wa. 2020) ........ 11

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ........ 17

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026), *cert. granted*, No. 26-239, 2026 WL 3453847 (U.S. Nov. 13, 2026) ........ 18, 19

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ........ 9

*Rincon Band of Mission Indians v. S.D. Cnty.*, 495 F.2d 1 (2d Cir. 1974) ........ 16

*Stanford Daily Publ'g Corp. v. Rubio*, No. 25-CV-06618-NW, 2026 WL 2549090 (N.D. Cal. Aug. 28, 2026) ........ 26

*Suri v. Trump*, 184 F.4th 260 (4th Cir. 2026) ........ 8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........ 2

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........ 8, 24, 25

*Trump v. Hawaii*, 585 U.S. 667 (2018) ........ 16

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ........ 13

*VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151 (10th Cir. 2021) ........ 16

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2809 (2026) ........ 25

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ........ 13

**Statutes**

Illegal Immigr. Reform and Immigrant Resp. Act of 1996, Pub. L. 104–208, Div. C, § 306(a)(2), 110 Stat. 3009 (1996) ........ 20

**Other Authorities**

David Ingram, *Unions Sue Trump Administration Over Social Media 'Surveillance' Program*, NBC News (Oct. 16, 2025), https://perma.cc/U4BN-96GF ........ 24

Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025) ........ 19

Exec. Order No. 14188, 90 Fed. Reg. 8847 (Feb. 3, 2025) .................................... 19

Genevieve Lakier, *Jawboning as a Problem of Constitutional Evasion*, Knight First Amendment Institute at Columbia University, Oct. 13, 2023, https://perma.cc/85TG-EPWM ............................... 15

Luis Ferré-Sadurní, *A Hasidic Jew Protested Against an Israeli Flag. He May Be Deported.*, N.Y. Times (Sept. 30, 2026), https://perma.cc/ML2H-L5XZ.......................................................................... 24

U.S. Dep't of State (@StateDept), X (Oct. 26, 2025), https://perma.cc/FES6-W3TW ......................................................................... 24

## Introduction

Defendants' argument that injunctive relief is unnecessary in this case is fatally undermined by their contention that the district court's declaration and vacatur of the Policy do not preclude them from continuing to arrest, detain, deport, and revoke the visas of noncitizens based on their pro-Palestinian advocacy. As explained below, Defendants misunderstand the import of the declaration and vacatur. That Defendants view these forms of relief as ineffectual, however, only underscores the need for an injunction.

## I. The requested injunctive relief is warranted.

Defendants argue that Plaintiffs are not entitled to the requested injunctive relief for four reasons: first, the district court lacked subject matter jurisdiction to enter *any* relief; second, the Policy and Defendants' threats did not violate the First Amendment; third, the relief is barred by 8 U.S.C. § 1252(f)(1); and fourth, the relief is barred by *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Defs.' Reply 1–2, 44–45. Each of these contentions is wrong.[1]

[1] Defendants are wrong to assert that this Court should review the district court's denial of injunctive relief for abuse of discretion. The district court did not memorialize its decision to deny injunctive relief, but it explained orally that it was concerned that *CASA* foreclosed broad injunctive relief and that relief limited to Plaintiffs' noncitizen members would expose them to retaliation. Tr. of Remedies Hr'g, Dist. Ct. Dkt. 310, 7:11–8:17, 9:3–20; *see also* JA165 n.1; JA166 n.2. This conclusion was a legal one about the application of *CASA*, and accordingly the Court

### A. The district court had subject matter jurisdiction to enter relief.

#### 1. Plaintiffs have standing.

##### a. Plaintiffs have associational standing.

Defendants argue that Plaintiffs fail to satisfy the imminence requirement for standing because they have not shown a "substantial risk" of harm under the Policy. Defs.' Reply 4 (citing *Susan B. Anthony List* (*SBA List*) *v. Driehaus*, 573 U.S. 149 (2014)). But as Plaintiffs have already explained, the AAUP and MESA plainly meet this standard because they have demonstrated a "credible threat of enforcement" against their members. *SBA List*, 573 U.S. at 159; *see* Pls.' Br. 20–22.

Defendants' chief response is to point to *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013); Defs.' Reply 5–6, but that case is a far cry from this one. The plaintiffs there had no idea how the surveillance authority they challenged was being used; their theory of standing relied on a "highly attenuated chain of possibilities" not just about who the authority would be used against and how, but also whether the authority would be used at all. 568 U.S. at 410. Here, Defendants have threatened to go after individuals exactly like Plaintiffs' members, and they have repeatedly made good on that threat, investigating thousands for their pro-Palestinian advocacy, revoking the visas of and seeking to deport hundreds on the

---

must review it de novo. *See Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217 (1st Cir. 2004).

basis of that advocacy, and threatening to target still more. Pls.' Br. 6–7, 11–12; *see infra* p. 24 n.10.

Defendants' claim that enforcement has been "rare," Defs.' Reply 7, 10, is therefore wrong. But it is also irrelevant. This Court has found a "credible threat of enforcement" even absent a history of enforcement against the plaintiffs or others similarly situated, *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 51 (1st Cir. 2021), based on the assumption that the state will enforce its "non-moribund" laws, "absent evidence to the contrary," *id.* (quoting *Blum v. Holder*, 744 F.3d 790, 798 n.11).[2]

**b. Plaintiffs have organizational standing.**

Defendants' claim that Plaintiffs "do not defend" the district court's determination that MESA has standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is baseless. *Cf.* Defs.' Reply 11. Plaintiffs have argued all along that the Policy directly impairs the AAUP's and MESA's core activities, Pls.' Br. 23–24, which is precisely the formulation of *Havens* that the Supreme Court endorsed in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024).

[2] Defendants' less-than-1%-referral-rate claim, Defs.' Reply 7, is misleading. The 5,000 leads included many citizens and individuals who were not students or faculty. Add.94; JA789:17– JA790:1; JA887:19–23, JA888:24–JA889:5. But as the district court also found, Defendants' "argument that few of the originally investigated names were targeted is little comfort" where those referred "were almost universally approved for adverse action, and… the reasons for being [referred] . . . included any form of online suggestion that one was 'pro-Hamas.'" Add.202.

Defendants do not dispute that the AAUP and MESA have suffered "injuries to their core activities." Defs.' Reply 12. But they say Plaintiffs have not shown traceability and redressability because Plaintiffs' theory of standing relies on the actions of third parties, namely the choice to self-censor by noncitizens who would otherwise engage with the organizations. As the Supreme Court has explained, a plaintiff's theory of standing may depend on how regulated third parties will act in response to government regulation; plaintiffs need only show that those third parties "will likely react in predictable ways." *DOC v. New York*, 588 U.S. 752, 768 (2019); *accord Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025). That noncitizen students and scholars would withdraw from Plaintiffs' activities because of the Policy is entirely predictable; indeed, the district court expressly found that it was Defendants' goal. Pls.' Br. 23–25.

**c. Plaintiffs' injuries are redressable.**

Defendants' redressability argument rests on the remarkable claim that the district court's declaration and vacatur of the Policy do not preclude Defendants from continuing to deport noncitizens based on their pro-Palestinian advocacy so long as they say they are doing so directly under their statutory authorities rather than under the Policy. *Cf.* Defs.' Reply 13–15. On Defendants' view, the district court's declaration and vacatur of the Policy have no effect. *See id.* This argument does not prove that Plaintiffs' injuries are not redressable; it merely underscores the

necessity of injunctive relief. And, contrary to Defendants' view, *id.*, injunctive relief would be effective.

Much of Defendants' argument rests on their mistaken belief that Plaintiffs seek injunctive relief only against the Policy and Defendants' threats. But Plaintiffs have made clear throughout that they also seek: (1) an order *directly* enjoining Defendants from taking certain enforcement actions not covered by § 1252(f)(1) on the basis of protected speech (namely, revoking visas and initiating removal proceedings, to the extent the basis for doing so is the revocation of a noncitizen's visa or the noncitizen's endorsement or espousal of terrorist activity), *see* Pls.' Br. 45; and (2) a broader injunction from the Supreme Court against the arrest, detention, and deportation of noncitizens based on protected speech, *see* Pls.' Br. 45 n.11; *see also* Pls.' Mot. for Remedies 16 n.6, Dist. Ct. Dkt. 277; Proposed Order 7, Dist. Ct. Dkt. 227-1; JA335 (Requests for Relief B & D).

But even an injunction limited to the Policy would redress Plaintiffs' injuries because it would remove any lawful authority for Defendants to target noncitizen students and faculty based on their pro-Palestinian speech. To be sure, enjoining the Policy would not bar Defendants from using the underlying statutory provisions; but it would prohibit Defendants from invoking those provisions in the unlawful ways that form the Policy. That makes this case wholly unlike *Coalition for Humane Immigrant Rights* (*CHIR*) *v. Mullin*, 185 F.4th 1275 (D.C. Cir. 2026), where the

plaintiffs failed to show that a stay of a new expedited-removal policy would leave members any less susceptible to expedited removal because the government could implement the same policy by relying on a regulation the plaintiffs did not challenge. *Id.* at 1282; *cf.* Defs.' Reply 14. Indeed, shortly after the D.C. Circuit decided *CHIR*, it decided *Mennonite Church USA v. DHS*, which distinguished *CHIR* on precisely this basis. No. 25-5209, 2026 WL 3132807, at *12 (D.C. Cir. Oct. 20, 2026) ("[I]f plaintiffs succeed in their RFRA, First Amendment, and APA challenges to the new immigration policy, no other legal authority allows the government to retain that policy.").

**2. The INA does not bar jurisdiction over Plaintiffs' claims.**

**a. 8 U.S.C. § 1252(b)(9) does not bar jurisdiction.**

Defendants err in contending that § 1252(b)(9) bars jurisdiction over Plaintiffs' claims. Plaintiffs are organizations who cannot be put into removal proceedings. Therefore, they could not raise their claims in removal proceedings (or before a court of appeals on a petition for review). Because Defendants' reading of § 1252(b)(9) would deprive Plaintiffs of *any* judicial review of their constitutional claims, this Court's binding precedent forecloses it. *Aguilar v. ICE*, 510 F.3d. 1, 11–12 (1st Cir. 2007) (§ 1252(b)(9) applies only when channeling would not deny claims "meaningful judicial review"); *accord Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020); *see also Jennings v. Rodriguez*, 583 U.S. 281 (2018) (plurality) (rejecting

as "extreme" reading of § 1252(b)(9) that would make certain claims "effectively unreviewable").

Defendants suggest that *Hines v. Immigration Law, PLCC v. EOIR*, No. 1:26-cv-01018, 2026 WL 969020 (D.D.C. Apr. 10, 2026), cuts against this argument, Defs.' Reply 19–20, but not only is *Hines* a district court case from out of circuit, it is also distinguishable. The plaintiff organizations there challenged "decision[s] to schedule removal proceedings more rapidly," decisions that arose *directly* from the removal process. 2026 WL 969020, at *10. By contrast, Plaintiffs challenge a policy and campaign of threats that "stand apart from the removal process itself." *Cf. Coal. for Indep. Tech. Rsch.* (*CITR*) *v. Rubio*, 836 F. Supp. 3d 215, 242–43 (D.D.C. 2026) (holding that § 1252(b)(9) did not apply where the plaintiff organization "challenge[d] an agency policy, not any action taken to remove a particular member"); *see also Mass. Coal. For Immigr. Reform v. DHS*, 621 F. Supp. 3d 84, 99 (D.D.C. 2022) (similar).

Defendants argue that it would be "paradoxical" to require individuals targeted under the Policy to raise their constitutional claims in removal proceedings, while allowing organizations that cannot be put into removal proceedings to do so in district court. Defs.' Reply 21. But even assuming those targeted under the Policy must pursue their claims through the INA's review process, it is hardly illogical to say that parties who *cannot* avail themselves of that process may raise their claims

in district court. The alternative would "nullify" the First Amendment rights of Plaintiffs "by prohibiting all remedies for the violations of those rights." *Aguilar*, 510 F.3d at 18 (discussing *Webster v. Doe*, 486 U.S. 592, 603 (1988)).[3]

Defendants' reliance on cases from other circuits involving individuals targeted under the Policy is therefore misplaced. *Cf.* Defs.' Reply 20–22; *see also CITR*, 836 F. Supp. 3d at 243. In any event, the Third Circuit's decision in *Khalil v. President*, 164 F.4th 259 (3d Cir. 2026), and the Second Circuit's decision in *Mahdawi v. Trump*, 183 F.4th 103 (2d Cir. 2026), are wrong, insofar as they held that § 1252(b)(9) impliedly divests district-court jurisdiction over a "now-or-never" challenge to unlawful detention that cannot be effectively remedied through the INA's review process. The Fourth Circuit's decision in *Suri v. Trump*, 184 F.4th 260 (4th Cir. 2026), was correct to reach the opposite conclusion.[4]

---

[3] Defendants do not claim—and rightly so—that Plaintiffs could obtain meaningful relief through any judicial review their noncitizen members might obtain if they were targeted. As Plaintiffs have explained, Pls.' Br. 29–30, any such review would come "too late" to remedy Plaintiffs' "here-and-now" injuries. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). The relief would also be critically limited, because any member put into removal proceedings would be able to get relief only as to the application of the Policy to herself and not to other members chilled by the Policy. *Cf. CASA,* 606 U.S. at 834. And, finally, the more effective the Policy is at chilling protected speech the less likely it is that any noncitizen member would engage in the speech that would subject them to the removal proceedings where they *could* get relief. *Cf. CITR*, 836 F. Supp. 3d at 243.

[4] The Second Circuit *sua sponte* granted en banc review of *Mahdawi*. *See* Order, *Mahdawi v. Trump*, No. 25-1113, Dkt. No. 244 (2d Cir. Sept. 3, 2026).

Finally, Defendants argue that § 1252(b)(9) applies because, although Plaintiffs do not challenge any removal decision, the relief they seek may have a downstream effect on removal decisions. Defs.' Reply 22–23. But the same could have been said in *DHS v. Regents of the University of California*, 591 U.S. 1 (2020), and the Supreme Court there held that § 1252(b)(9) did not apply. Defendants argue that *Regents* is inapposite because the policy there was one of non-enforcement, whereas the policy here is of enforcement. Defs.' Reply 22–23. But nothing in the text of § 1252(b)(9) supports that distinction. What was decisive in *Regents* was that the plaintiffs did not challenge "an order of removal," "the decision . . . to seek removal," or "the process by which . . . removability will be determined." 591 U.S. at 19 (quoting *Jennings*, 583 U.S. at 294–95). The same is true of Plaintiffs. *Cf. CITR*, 836 F. Supp. 3d. at 243.

**b. 8 U.S.C. § 1252(g) does not bar jurisdiction.**

As Plaintiffs have explained, § 1252(g) reaches only three discrete actions: decisions to commence proceedings, adjudicate cases, or execute removal orders. Pls.' Br. 25–26. Defendants suggest that Plaintiffs' policy challenge is mere subterfuge for a challenge to such decisions, Defs.' Reply 25, but it is not subterfuge to insist that a jurisdiction-stripping statute means what it says. *See Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (requiring "clear and convincing

evidence of congressional intent to preclude judicial review" of administrative action).

Defendants' purported indicia of creative pleading show nothing of the sort. Defendants dwell on evidence presented at trial and the district court's findings that Defendants sought to deport specific individuals pursuant to the Policy. Defs.' Reply 25. But that Plaintiffs marshalled this evidence, and the court relied on it, is hardly surprising in the face of Defendants' insistence that there was no policy. As the district court correctly concluded, evidence of the Policy's implementation is evidence of the Policy's existence. *See* Pls.' Br. 6–12. Defendants also argue that Plaintiffs' request for remedies "interferes with" with decisions to commence proceedings or adjudicate cases, but it does no such thing. Defs.' Reply 26. Plaintiffs seek relief against the Policy and directly against certain enforcement actions that are plainly not covered by § 1252(f)(1); that the Policy and those enforcement actions may result downstream in a removal does not bring Plaintiffs' challenge within § 1252(g)'s narrow remit. *See CITR*, 836 F. Supp. 3d at 240 ("[§ 1252(g)] protects the exercise of prosecutorial discretion at three enumerated points[, not] every antecedent policy choice that may eventually contribute to a removal.").

*Regents* and *NWDC Resistance* are directly on point, Pls.' Br. 26, and Defendants' attempts to distinguish those cases fail, *cf.* Defs.' Reply 26. Defendants note that the policy at issue in *Regents* included benefits such as work authorization

in addition to deferred action, *id.*, but never explain why this should matter. It is plain from the Supreme Court's § 1252(g) analysis that it did not. *Regents*, 591 U.S. at 19 ("The rescission . . . is not a decision to 'commence proceedings,' much less to 'adjudicate' a case or 'execute' a removal order."). Defendants argue that *NWDC Resistance* is inapposite because the plaintiffs there did "not seek to stop, delay, reverse, or otherwise interfere with any of the three discrete actions described in Section 1252(g), *as to any specific alien or particular proceedings*." Defs.' Reply 26 (quoting *NWDC Resistance v. ICE*, 493 F. Supp. 3d 1003, 1011 (W.D. Wa. 2020) (emphasis added)). The same is true here.

Finally, Defendants argue that, to the extent *AADC* recognized an exception to § 1252(g)'s jurisdictional bar for "outrageous" conduct, the exception does not apply. Defs.' Reply 27. But here too the reasons are unpersuasive. Defendants argue that *AADC* involved "the same First Amendment claims." *Id*. But as already explained, that case involved claims of selective enforcement, while in this case the legal basis for Defendants' purported authority to act is constitutionally protected speech. Pls.' Br. 35–36. Defendants also argue that because Plaintiffs are not themselves in removal proceedings, their claim of "outrageousness" is more "tenuous." Defs.' Reply 27. It is unclear why this makes Defendants' *policy* of deporting noncitizens based on their political viewpoints any less outrageous,

particularly when the purpose and effect of that policy have been to chill protected speech.

### B. The Policy and Defendants' threats violate the First Amendment.

#### 1. The Policy violates the First Amendment.

The Policy discriminates based on viewpoint and cannot survive any standard of review. Pls.' Br. 34–36. In response, Defendants fixate on whether noncitizens' First Amendment rights are "coextensive" with those of citizens. Defs.' Reply 27–28, 30–31. But that question is academic for purposes of this appeal, because the Policy fails even under the "facially legitimate and bona fide" standard Defendants advance. Pls.' Br. 36–38; Add.189–90.

Attempting to escape this conclusion, Defendants assert that the *Mandel* line of cases Plaintiffs point to is inapposite because the cases do not involve "the First Amendment rights of the alien who was excluded." Defs.' Reply 31. But it is unclear why that should matter, and Defendants do not say. All of Plaintiffs' cases applied Defendants' preferred standard, and they correctly concluded that it is not facially legitimate and bona fide for the government to exclude noncitizens based on viewpoint. Pls.' Br. 33 (discussing, inter alia, *Abourezk v. Reagan*, 592 F. Supp. 880, 887 (D.D.C. 1984)).

Defendants also claim the district court "impermissibly look[ed] behind the face of the decisional documents" in the cases of the five targeted noncitizens. Defs.'

Reply 34. But the district court reviewed officials' statements not to find "ulterior motive" in those cases, but rather to determine the Policy's existence and scope. Defendants simply seek to relitigate the district court's factual finding that the Policy exists, but they come nowhere close to demonstrating the clear error necessary to displace that finding.

Finally, the new authorities cited by Defendants do not advance their cause. Even assuming *Verdugo-Urquidez*'s reasoning applies to First Amendment rights, Plaintiffs' noncitizen members reside in the United States and have "developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), the Supreme Court upheld the challenged speech restrictions only after applying strict scrutiny, *id.* at 27–28, and the Court expressly disavowed that "a regulation of independent speech would pass constitutional muster," *id.* at 39. Defendants' half-hearted gesture to history and tradition fares no better. The single judge concurrence they cite is from out of circuit and goes against the weight of precedent holding that noncitizens present here enjoy First Amendment rights. Pls.' Br. 31–32.[5]

[5] Defendants have waived the argument that the Policy is not final agency action under the APA. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000) ("[I]ssues advanced for the first time in an appellant's reply brief are deemed waived.").

**2. Defendants' coercive threats independently violate the First Amendment.**

The district court erred in rejecting Plaintiffs' coercion claim based on its legal conclusion that coercive threats are not actionable unless they are "targeted specifically at [Plaintiffs'] members . . . rather [than] at noncitizens in a general way." Add.203–04; *see* Pls.' Br. 38–39. That conclusion rests on a mistaken view of the governing legal standard, which, as the Supreme Court recently reaffirmed, requires plaintiffs to demonstrate "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *NRA v. Vullo*, 602 U.S 175, 191 (2024). Plaintiffs made that showing, and Defendants' arguments to the contrary are wrong.

First, Defendants suggest that the district court's ruling was a factual one subject to clear-error review, Defs.' Reply 2, 35, but that is incorrect. The conclusion that Plaintiffs are contesting was a legal one—about what a plaintiff must show to demonstrate coercion—and it is therefore subject to *de novo* review.

Second, Defendants double down on the district court's view that threats must name the plaintiffs to qualify as coercive, but again, that is not the law. The test articulated in *Vullo* is a practical one, requiring courts to consider the defendants' conduct "in context," and to determine whether that conduct, in context, "could be reasonably understood to convey a threat." 602 U.S. at 191. The Court did not require that officials specifically identify the targets of their threats.

Nor would it make any sense to limit *Bantam* and *Vullo* to threats that identify their targets. The overarching concern of those cases was in preventing the government from circumventing the First Amendment's rules through informal government coercion—what Professor Genevieve Lakier has called the risk of "constitutional evasion."[6] Defendants' proposed limit would enable precisely that kind of evasion by allowing state actors to insulate their threats from judicial review by broadening or generalizing the threats. On Defendants' view, an official who threatened one critic by name would face liability, but an official who threatened every critic in a class would not. This rule makes no sense.

Under *Vullo* as properly understood, it is enough to show that the threats were directed at a class of which Plaintiffs' noncitizen members were a part. Plaintiffs made that showing. As the district court found, Plaintiffs' noncitizen members are "squarely within the class that is subject to the alleged mode of enforcement." Add.173. Those members "have all been made to understand that there are certain things that it may be gravely dangerous for them to say or do." Add.204. And Defendants acted "in part intentionally to chill the speech of . . . Plaintiffs' noncitizen members." Add.206.

[6] Genevieve Lakier, *Jawboning as a Problem of Constitutional Evasion*, Knight First Amendment Institute at Columbia University, Oct. 13, 2023, https://perma.cc/85TG-EPWM.

Defendants' authorities are inapposite. *Cf.* Defs.' Reply at 36–38. *Rincon Band of Mission Indians v. San Diego County* concerned general threats relating to illegal *conduct* (gambling), not speech, and there was no record of enforcement to make the threats concrete. 495 F.2d 1, 4–6 (2d Cir. 1974). *VDARE Foundation v. City of Colorado Springs* did concern speech, but the official statement at issue "contain[ed] no threat." 11 F.4th 1151, 1165 (10th Cir. 2021). Finally, Defendants rely on *Trump v. Hawaii*, Defs.' Reply at 38–39, but that case also did not involve government threats. 585 U.S. 667, 697–99 (2018).

Third, Defendants argue that their statements must be "taken by themselves without reference to enforcement" and that, considered in this way, they targeted only unlawful conduct. Defs.' Reply 39–41. This is wrong. *Vullo* requires courts to consider the challenged conduct "in context," 602 U.S at 191, and here that context makes clear that Defendants' threats targeted constitutionally protected speech. As the district court found, the Policy articulated by Defendants' statements conflated pro-Palestinian advocacy with antisemitism and support for terrorism. Add.198–99. When officials threatened "Hamas supporters," JA1604, they meant people like the five noncitizens whom the court found were targeted for their protected speech and associations. Add.163–64, 198–202. Defendants' threat to do to others what was done to those five is a threat aimed at protected speech.

#### 3. An injunction against Defendants' coercive threats would not violate officials' free speech rights.

Defendants invoke officials' free speech rights, Defs.' Reply 37–38, 56–58, but officials cannot use threats "to suppress disfavored speech," *Vullo*, 602 U.S at 190. The authorities Defendants cite draw the very line Plaintiffs ask the Court to enforce. *Pleasant Grove City v. Summum* recognized the government's right to speak for itself, but it added that "[t]his does not mean that there are no restraints on government speech." 555 U.S. 460, 468 (2009). *Goldstein v. Galvin* recognized that government speech can support liability when it is "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." 719 F.3d 16, 30 (1st Cir. 2013) (quoting *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006)). And *Vullo* confirmed that an official may "criticize particular beliefs," even "forcefully." 602 U.S. at 188. "What she cannot do, however, is use the power of the State to punish or suppress disfavored expression." *Id.*

Plaintiffs' requested injunction tracks that line. It would bar Defendants from threatening to revoke visas or green cards, or to arrest, detain, and deport noncitizens, "on the basis of constitutionally protected speech or association." Pls.' Br. 45 (citing Dist. Ct. Dkt. 277-1 at 7). Officials would remain free to condemn pro-Palestinian advocacy, to defend their policies, and to warn that they will enforce the law against material support for terrorism or other unlawful conduct. What they could not do is

threaten to deport people for speech the First Amendment protects. That is consistent with the injunction imposed in *Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015), which prohibited a sheriff from threatening payment-service providers in order to prevent them from doing business with Backpage.com.

### C. The requested relief is consistent with 8 U.S.C. § 1252(f)(1).

The requested injunctive relief is consistent with 8 U.S.C. § 1252(f)(1). Pls.' Br. 43–45. Defendants' arguments to the contrary miss their mark.

Defendants argue that an injunction against the Policy is foreclosed because it could prevent the initiation or conduct of removal proceedings. Defs.' Reply 48. But as the Fifth, Seventh, Ninth, and D.C. Circuits have held, and as the Supreme Court appeared to acknowledge in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), § 1252(f)(1) does not bar injunctive relief merely because that relief may indirectly affect Defendants' implementation of a covered provision. *See* Pls.' Br. 44–45. The question is whether the requested injunctive relief would "order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" a covered provision. 596 U.S. at 550. An injunction against *the Policy* would not.

The D.C. Circuit's decision in *Refugee & Immigrant Center for Education & Legal Services* (*RAICES*) *v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026), *cert. granted*, No. 26-239, 2026 WL 3453847 (U.S. Nov. 13, 2026), is instructive. There, the plaintiffs

sought an injunction against the implementation of a presidential proclamation that suspended asylum (a right codified in an uncovered provision) and withholding of removal (a right codified in a covered one). The court held that this injunction was not barred because it ran against the proclamation, not any covered provision; the proclamation itself was not premised on any covered provision; and the injunction did not compel compliance with any such provision. *Id.* at 118. In other words, the proclamation and its implementation stood independently of any covered statute.[7] The same is true of the Policy, which implements executive orders that, like the proclamation, are not premised on any covered provision. And an injunction against the Policy would compel compliance with the First Amendment, not any particular provision of the INA.[8]

Defendants next assert that Plaintiffs have "abandoned" their request for an injunction against taking the following actions based on protected speech: (1) revoking noncitizens' visas under § 1201(i); (2) charging them with removability under § 1227(a)(1)(B) (to the extent the basis for doing so is a visa revocation under

---

[7] Because the Supreme Court also granted certiorari on the merits, the Court will presumably reach this aspect of the court of appeals' decision only if the Court rules for the plaintiffs on the merits.

[8] The only INA provisions cited by the executive orders—8 U.S.C. § 1182(a)(2)–(3), (f), and § 1451—are located outside Part IV of the statute. Exec. Order No. 14161 §§ 2(i), 3(a), 3(e), 90 Fed. Reg. 8451 (Jan. 30, 2025); Exec. Order No. 14188 § 3(e), 90 Fed. Reg. 8847 (Feb. 3, 2025).

§ 1201(i)), and (3) charging them with removability under § 1227(a)(4)(B) (to the extent the basis for doing so rests on the "endorse or espouse" provisions). Defs.' Reply 45–46. This is wrong. Plaintiffs maintained this request in their opening brief. *See* Pls.' Br. 45.

Defendants' argument that the component parts of this injunction are barred fares no better. Defendants say that an injunction against the operation of § 1227(a)(1)(B) and (a)(4)(B) is foreclosed because those provisions *are* covered. Defendants argue that this is so because the bar in § 1252(f)(1) applies to "the provisions of chapter 4 of title II [of the INA] as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996," IIRIRA, Pub. L. 104–208, Div. C, § 306(a)(2), 110 Stat. 3009–546, 611 (1996), and although § 1227(a)(1)(B) and (a)(4)(B) were enacted after IIRIRA, they amended "chapter 4 of title II [of the INA]." This argument, however, requires ignoring the text that immediately follows: "as amended by [IIRIRA]." As the Ninth Circuit observed in *Galvez v. Jaddou*, a statute enacted after 1996 cannot be "a law that was amended by the IIRIRA of 1996." 52 F.4th 821, 830–31 (9th Cir. 2022).[9]

---

[9] Defendants' suggestion that the "endorse or espouse" provisions are not at issue in this case is wrong. *Cf.* Defs.' Reply 50. From the filing of their complaint, Plaintiffs have alleged that Defendants seek to effectuate the Policy in part through these provisions, *see* JA298, 333; *see also id.* JA335 (Request for Relief ¶ D); this allegation, moreover, was borne out at trial, *see, e.g.*, Add.97, 99, 118, 120, 133 (relying on "support for a designated terrorist organization" as ground for removability under the Policy); *see also* Add.143 (discussing diplomatic cable at

Defendants say that an injunction against visa revocation is foreclosed because, although § 1201(i) is not covered, it is "inextricably intertwined" with provisions they say are, namely §§ 1227(a)(1)(B) and 1229a. But § 1227(a)(1)(B) is not covered for reasons already given, and in any event this argument fails on its own terms. If a provision is uncovered, the fact that its operation may have downstream impacts on ones that are cannot bring it within § 1252(f)(1). Concluding otherwise would give § 1252(f)(1) "a meaning without any limiting principle, expanding the provision far beyond its terms to strip district courts of jurisdiction over all kinds of matters not expressly covered." *Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 56 (D.D.C. 2025).

Finally, Defendants argue that granting the requested relief would put the court "in the untenable position of micromanaging day-to-day immigration enforcement operations." Defs.' Reply 51. Not so. The requested injunctive relief would not bar Defendants from enforcing the INA's admissibility or removal provisions—including those related to foreign policy and terrorism—on grounds other than protected speech and association. It would merely require compliance

JA1775–80, which requires consular officers to screen the social media of visa holders); JA1778 (providing that any "hostile attitude[s]" to U.S. citizens or culture or "advocacy or sympathy for foreign terrorist organizations" must be assessed under the "endorse or espouse" provisions).

with the district court's ruling that the Constitution forbids the government from deporting noncitizens based on protected speech and association.

Courts have routinely awarded similar relief where they recognize a constitutional or statutory limit on immigration enforcement and then require compliance with that limit. *See, e.g.*, *Al Otro Lado v. EOIR*, 138 F.4th 1102, 1126–28 (9th Cir. 2025) (affirming injunction against the application of asylum transit ban to class members turned away at the border), *rev'd on other grounds*, 609 U.S. 258 (2026); *Castañon-Nava v. DHS*, 175 F.4th 828, 834 (7th Cir. 2026) (affirming extension of consent decree requiring DHS to comply with § 1357(a)(2) when making warrantless arrests); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 749 (9th Cir. 2026) (affirming set aside of Venezuela and Haiti TPS terminations), *vacated and remanded on other grounds*, No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026); *see also supra* at p. 18–19 (discussing *RAICES*). Accepting the contrary argument that the separation of powers forecloses any relief that limits enforcement discretion would mark a radical departure from this precedent and create a constitutional black hole. *Cf. Hernandez-Lara v. Lyons*, 10 F.4th 19, 43 (1st Cir. 2021) ("Though we hope and expect that the political branches exercise their authority in harmony with the rights of noncitizens, history and common sense teach that rights are most likely to be disregarded when they belong to those who cannot vote.").

### D. The requested relief is consistent with *Trump v. CASA*.

Defendants agree that, post-*CASA*, courts may award broad injunctive relief where it is necessary to afford the plaintiffs "complete relief." Defs.' Reply 53. They err, however, in arguing that the requested injunction is broader than necessary to achieve that goal.

An injunction limited to Plaintiffs' members would exacerbate the chill this suit seeks to remedy by requiring Plaintiffs to identify their noncitizen members to the government. *See* Pls.' Br. 46–47; *see also* Brief of *Amici Curiae* American Civil Liberties Union et al. 4–10. Defendants effectively concede this point. They do not dispute that few members would be willing to share their names out of legitimate fears of retaliation, and that those who do may continue to self-censor—especially since they would lose the injunction's protection if they stop being members (as with students who graduate and untenured faculty who lose their posts). Defendants also do not dispute that requiring Plaintiffs to identify their members would burden their First Amendment rights in another way, by exposing their constitutionally protected associations to the government. Indeed, just last term, the Supreme Court reaffirmed the principle that "'compelled disclosure of affiliation with groups engaged in advocacy' can 'constitute a[n] effective restraint on freedom of association.'" *First*

*Choice Women's Res. Ctrs., Inc., v. Davenport*, 608 U.S. 174, 185 (2026) (quoting *NAACP v. Alabama*, 357 U.S. 449, 462 (1958)).[10]

Defendants' only response is that the associational plaintiffs in *CASA* made these arguments, and the Supreme Court rejected them. Defs.' Reply 54–55. *CASA*, however, was not a case about First Amendment chill, and although the associational plaintiffs argued that identifying their members would be burdensome, the majority left this argument to lower courts to consider in determining "whether a narrower injunction is appropriate." 606 U.S. at 834; *id.* at 861 (staying the injunctions only to the extent they were broader than necessary to afford the plaintiffs complete relief). Defendants cite Justice Thomas's concurrence stating that the Court did reject this argument, Defs.' Reply 55 (quoting 606 U.S. at 865), but it is the

[10] Members' fears of retaliation remain acute given Defendants' continued threats to deport noncitizens based on speech. *See, e.g.*, David Ingram, *Unions Sue Trump Administration Over Social Media 'Surveillance' Program*, NBC News (Oct. 16, 2025), https://perma.cc/U4BN-96GF (State Department spokesperson stating that department would "continue to revoke the visas of those who . . . commit acts of anti-American, pro-terrorist, and antisemitic hate"); U.S. Dep't of State (@StateDept), X (Oct. 26, 2025), https://perma.cc/FES6-W3TW (stating, after revoking visa of journalist Sami Hamdi in apparent retaliation for his criticism of Israel, "[w]e continue to revoke the visas of" "foreigners who support terrorism"); Luis Ferré-Sadurní, *A Hasidic Jew Protested Against an Israeli Flag. He May Be Deported.*, N.Y. Times (Sept. 30, 2026), https://perma.cc/ML2H-L5XZ (DHS stating that the government can deport noncitizens who "glorif[y] and support[] terrorists").

majority's opinion that controls the bounds of the Court's decision, not a concurring justice's description of it.[11]

Defendants also rely on *CASA* to attack the argument that a member-limited injunction would undermine the consistency that immigration laws are designed to protect. Defs.' Reply 55. But the majority in *CASA* did not address this argument, either, leaving it to lower courts on remand. *See* 606 U.S. at 861. And in *Washington v. Trump*, following *CASA*, the Ninth Circuit upheld a universal injunction against the challenged executive orders after finding that the plaintiffs' injury could not be adequately redressed "absent a uniform application of the Citizenship Clause throughout the United States." 145 F.4th 1013, 1039 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2809 (2026). The same is true here. *See* Pls.' Br. 47.

Finally, Defendants assert that a member-limited injunction is sufficient to redress Plaintiffs' organizational injuries. Defs.' Reply 54. But this is belied by the record. *See* Pls.' Br. 47–48. As the district court found, MESA's core activity is to facilitate academic discourse and scholarship about issues impacting the Middle East, Add.181, and the AAUP's core activity is to protect academic freedom and shared governance in higher education, Add.73–74. These missions will continue to

[11] The lower courts in *CASA* ultimately did not have occasion to consider the associational plaintiffs' argument, but other courts have accepted analogous arguments. *See* Pls.' Br. 46.

be seriously impeded if nonmember, noncitizen scholars and students are pressured to self-censor and decline to contribute the scholarship and perspectives they would otherwise share. *See, e.g.*, Add.147, 181 (finding that, in response to the Policy, submissions to MESA's flagship academic conference dropped and MESA likely lost membership); JA667–68 (describing chill caused by Policy on Columbia's campus); *cf. Stanford Daily Publ'g Corp. v. Rubio*, No. 25-CV-06618-NW, 2026 WL 2549090, at *8–9, 31 (N.D. Cal. Aug. 28, 2026). At the very least, these harms necessitate an injunction that encompasses all noncitizen faculty and students. Pls.' Br. 47–48; *see also* Brief of *Amici Curiae* ACLU et al. at 9–10 (explaining why a chill in the academic environment is "especially dangerous"); *cf. Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 3034056, at *5 (N.D. Ill. Oct. 30, 2025) (holding that it was necessary to enjoin all enforcement of anti-DEI certification requirement to protect plaintiff organization's "ability to partner and collaborate with [other recipients of federal funds]").[12]

---

[12] Should the Court nonetheless determine that injunctive relief must be limited to Plaintiffs' members, relief should extend to all members—not simply those who were members at the time of filing suit. *Cf.* Defs.' Reply at 54. Indeed, the government itself recently proposed limiting a preliminary relief ruling to the "current and future clients" of a plaintiff organization—a proposal which the Ninth Circuit adopted. *Immigrant Defs.' L. Ctr. v. Noem*, 145 F.4th 972, 980 (9th Cir. 2025); *see also Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (concluding that plaintiff association of parents was entitled to preliminary injunction requiring school board to provide parents notice and a chance to opt out any time they wished to introduce an "LGBTQ+-inclusive" storybook in the classroom). Defendants'

## Conclusion

For the foregoing reasons, the Court should reverse the district court to the extent it denied Plaintiffs' request for injunctive relief.

November 19, 2026

Respectfully submitted,

/s/ *Ramya Krishnan*

Ramya Krishnan
Xiangnong (George) Wang
Nathalie Beauchamps*
Carrie DeCell
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

Edwina Clarke
David Zimmer
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Noam Biale
Michael Tremonte
Alexandra Conlon
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

*Application for bar admission pending

authorities are inapposite. They support only the principle that standing is determined at the time a suit is filed.

## Certificate of Compliance

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 28.1(e)(2)(c) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,484 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: November 19, 2026

*/s/ Ramya Krishnan*
Ramya Krishnan